**Robert E. GARRETT, Plaintiff,**

v.

**FISHER TITUS HOSPITAL, et al., Defendant.**

**Case No. 3:02 CV 7562.**

United States District Court, N.D. Ohio, Western Division.

May 24, 2004.

George Evans, Oglesby & Oglesby, Sandusky, OH, for Plaintiff.

Gregg A. Peugeot, Gregory T. Rossi, Douglas N. Godshall, Hanna, Campbell & Powell, Akron, OH, Thomas M. Coughlin, Sr., Thomas M. Coughlin, Jr., Ritzler, Coughlin & Swansinger, Cleveland, OH, Nick C. Tominom, Tomino & Latchney, Medina, OH, Edwin A. Coy, Robison, Curphey & O'Connell, Toledo, OH, for Defendant.

*MEMORANDUM OPINION*

KATZ, District Judge.

*MEMORANDUM OPINION*

Pending before the Court is Defendant Fisher–Titus Medical Center's ("Fisher–Titus") motion for summary judgment (Doc. No. 49) as to which Plaintiff has filed a response (Doc. No. 52) and Fisher–Titus has filed a reply (Doc. No. 53); Defendants Perkins Township ("Perkins Township") and Al Jenkins' ("Jenkins") motion for summary judgment (Doc. No. 51) as to which Plaintiff has filed a response (Doc. No. 54); Defendant Rebecca Hatfield's ("Hatfield") motion for summary judgment and supplement thereto (Doc. Nos. 59 & 63); and Defendant Gary Joiner's ("Joiner") motion for summary judgment (Doc. No. 61).

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and 28 U.S.C. § 1367. For the reasons stated below, Defendants' motions will be granted.

### BACKGROUND

The underlying facts of this case are set forth in *State v. Garrett,* No. E–02–015, 2003 WL 22233542, 2003 Ohio App. LEXIS 4725 (Ohio App. 6th Dist. Sept. 30, 2003). In *Garrett,* the court stated:

> On the night of October 18, 2001, [Garrett] took Denise Butler Joiner [("Denise")], who was pregnant with his child, to Fisher–Titus Medical Center in Norwalk, Ohio, to deliver their baby. Prior to leaving for the hospital, [Garrett] and [Denise] had argued heatedly. On October 19, 2001, [Denise] gave birth to a healthy baby boy but shortly after delivery she developed severe headaches. Her doctor treated her with a pain killer but she complained of continued pain in her head and upper back. She then experienced vomiting and incontinence, and four days after delivery began to experience chest pain and shortness of breath. For the next two days, [Denise] was intubated and unable to communicate. After a series of tests, doctors determined that [Denise's] heart was not functioning normally and that her lungs had filled with fluid. On October 27, [Denise] began to have seizures. When tests revealed a blood clot as well as hemorrhaging around the brain, [Denise] was transferred to St. Vincent/Mercy Medical Center in Toledo. She died on October 29, 2001. Following an autopsy, the coroner determined that there was evidence of trauma to the brain and ruled the cause of death homicide.

> On November 5, 2001, [Garrett] was indicted on one count of murder in violation of R.C. 2903.02; one count of felonious assault in violation of R.C. 2903.11(A)(1); one count of attempted felonious assault in violation of R.C. 2923.02(A), and one count of domestic violence in violation of R.C. 2919.25(A). On January 9, 2002, [Garrett] was indicted on one count of abduction in violation of R.C. 2905.02(A)(2) and one count of assault in violation of R.C. 2903.13(A). On January 9, 2002, two hours after the state filed the second indictment, [Garrett] moved for severance of any new charges filed in the case in what [Garrett] claimed would be an attempt to delay the trial or "bully the defense." On February 21, 2002, the trial court severed count 5, abduction, as it arose out of acts alleged to have occurred on January 3, 2001. On February 25, 2002, [Garrett] appeared before the trial court and indicated his desire to waive his right to a jury trial. [Garrett's] request for a trial to the bench led the trial court to reconsider its decision to sever the abduction charge. The trial court then asked [Garrett] whether he would still want to waive his right to a jury trial if the court reversed its decision on the severance. Upon further

discussion with his attorney, [Garrett] executed a written jury waiver. Following trial to the bench, [Garrett] was found guilty of the domestic violence, abduction and assault charges. [Garrett] was sentenced to one year incarceration as to the domestic violence conviction, four years incarceration as to the abduction conviction, and six months on the assault conviction. The sentences were ordered to be served consecutively.

*Id.* at 2003 WL 22233542, *1–2, 2003 Ohio App. LEXIS 4725, *3–6.

The *Garrett* court affirmed Plaintiff's convictions for domestic violence, assault and abduction, and the state trial court's judgment in all other respects, but reversed "as to the imposition of consecutive sentences" and remanded the case for re-sentencing. *Id.* at 2003 WL 22233542, *9, 2003 Ohio App. LEXIS 4725, *24. Re-sentencing was required because the state trial court did not make "the mandatory findings set forth in relevant statutes ... or give its reasons for imposing the consecutive sentences." *Id.* at 2003 WL 22233542, *5, 2003 Ohio App. LEXIS 4725, *15.

Plaintiff has filed the instant action alleging false arrest and malicious prosecution, intentional infliction of emotional distress, abuse of process, slander and libel, organizational liability against Fisher–Titus pursuant to O.R.C. § 2901.23, civil conspiracy and violation of federal rights. Defendants removed to federal court. Before proceeding, the Court cannot help but observe that Garrett has opposed only Fisher–Titus', and Perkins Township and Jenkins' motions for summary judgment, and then in only a very limited fashion.

## Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.,* 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

### B. PLAINTIFF'S FEDERAL CLAIMS

Garrett seeks redress for alleged violation of his constitutional rights pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. To establish a claim against a public official under § 1983, Plaintiff must prove that the conduct complained of was: (1) committed by a person acting under the color of state law; and (2) deprived him of a federally protected constitutional or statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001); *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir.2000). Garrett does not identify which federal rights Defendants are purported to have violated. Based on Defendants' motions for summary judgment, and Plaintiff's responses to Fisher–Titus, and Perkins Township and Jenkins, the Court construes Garrett's complaint to assert claims for unlawful arrest and malicious prosecution relating to the charge of murder on which he was exonerated.[1]

### 1. Perkins Township and Jenkins

#### a. Unlawful Arrest

Perkins Township and Jenkins assert that Plaintiff was arrested based on probable cause, and therefore his claim for unlawful arrest must fail. Jenkins also asserts that he is entitled to qualified immunity.

 Qualified immunity is an affirmative defense that shields public officials

---

1. Though found guilty of domestic violence as charged under the same indictment as that for murder, Garrett points out that prior to the grand jury's indictment, the complaint against him filed in Sandusky Municipal Court was only for murder in violation of O.R.C. § 2903.02(B). (Doc. No. 52, attached). It is on this complaint that Plaintiff's claims focus.

performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Like absolute immunity, qualified immunity "is an *immunity from suit* rather than a mere defense to liability ... [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original).

In *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court made clear that "[i]n a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in a proper sequence." The proper sequence requires the Court to determine (1) whether the plaintiff has asserted a violation of a known civil constitutional right, and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known he was violating plaintiff's constitutional rights. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir.1993). In determining whether a violation of a constitutional right has been established, the Court views the evidence "in [a] light most favorable to the party asserting the injury." *Crockett v. Cumberland Coll.,* 316 F.3d 571, 579 (6th Cir.2003).

Once a qualified immunity defense is raised, the "plaintiff is obliged to present facts which if true would constitute a violation of clearly established law." *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). While the ultimate burden of proof is upon the plaintiff to show that the defendant is not entitled to qualified immunity, the defendant "bear[s] the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question." *Rich v. City of Mayfield Heights,* 955 F.2d 1092 (6th Cir.1992). Qualified immunity provides a broad range of protection, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992).

"Today it is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland Coll.,* 316 F.3d 571, 580 (6th Cir. 2003).

> For a police officer to have probable for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing."

*Id.* (citations omitted).

> In the instant action, Jenkins maintains: On October 29, 2001, I was assigned to assist in the investigation of the death of Denise L. Joiner. Ms. Joiner had died at St. Vincent Hospital in Toledo. It was alleged that Ms. Joiner's death was the result of a physical assault on her by her boyfriend, Robert Garrett.

(Doc. No. 51, Jenkins Aff., ¶ 3).

> In the course of my investigation, I interviewed Rebecca Hatfield, mother of Denise Joiner. Ms. Hatfield advised me

that Denise had been beaten by Garrett on several occasions. Ms. Hatfield further informed me that on October 18, 2001, she was with Denise Joiner at 407 Pennsylvania Avenue in Perkins Township. At that time, Denise's son, Jordan Butler, ran up to Hatfield stating that his mother was being beaten by Garrett. Ms. Hatfield further indicated that she went to the bedroom where Denise and Garrett were and could hear Garrett yelling at Denise. At the time, Denise was pregnant.

*Id.* at ¶ 4.

My investigation further determined that Denise Joiner then went to Fisher–Titus Medical Center in Norwalk, Ohio, and gave birth to a baby the following day. However, soon thereafter Denise Joiner's condition deteriorated due to bleeding in her head, and she was transferred to St. Vincent Hospital in Toledo, where she died on October 29, 2001.

*Id.* at ¶ 5.

In the course of the investigation, the Lucas County Coroner, Dr. Beisser, was contacted. Dr. Beisser stated that it was her opinion that Denise Joiner died from a head injury.

*Id.* at ¶ 6.

 The only reasonable conclusion is that there was probable cause to arrest Garrett, and that Jenkins is entitled to qualified immunity as there was no violation of Plaintiff's constitutional rights.[2] Jenkins is also entitled to qualified immunity because he relied on Barylski's advice to determine whether there was probable cause. *Donovan v. Briggs,* 250 F.Supp.2d

242, 258 (W.D.N.Y.2003).[3] Further, Plaintiff was convicted of domestic violence as charged under the same indictment as that for murder and such charge arose out of his arrest. "[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause." *Walker v. Schaeffer,* 854 F.2d 138, 143 (6th Cir.1988) (quoting *Cameron v. Fogarty,* 806 F.2d 380, 388–89 (2d Cir.1986)).

Since Plaintiff cannot establish a violation of a known constitutional right, Perkins Township is also entitled to summary judgment on Plaintiff's § 1983 claims pursuant to *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Doe v. Claiborne County, Tennessee,* 103 F.3d 495, 505–06 (6th Cir.1996) (explaining that such liability requires a showing that there has been a deprivation of a constitutional right and the governmental entity is responsible for it).

b. Malicious Prosecution

The Sixth Circuit's decisions in *Spurlock v. Satterfield,* 167 F.3d 995 (6th Cir.1999) and *Frantz v. Village of Bradford,* 245 F.3d 869 (6th Cir.2001) "have created some confusion" as to the viability of a claim for malicious prosecution under § 1983. *See Parks v. City of Chattanooga,* No. 1:02 cv 116, 2003 U.S. Dist. LEXIS 24290, at *9–11 (E.D.Tenn. Dec. 15, 2003). In *Thacker,* however, the court stated:

As in *Darrah,* in the present case, the district court analyzed plaintiffs' claims under the standards in *Frantz* and

---

**2.** Whether there is probable cause is for a jury to decide, "unless there is only one reasonable determination that is possible." *Thacker v. City of Columbus,* 328 F.3d 244, 255 (6th Cir.2003).

**3.** I contacted Erie County Assistant Prosecutor, Mary Ann Barylski, and advised her

of the information that I had gathered in my investigation. Prosecutor Barylski then spoke directly with Dr. Beisser about the cause of Denise Joiner's death. Prosecutor Barylski then advised me to charge Robert Garrett with murder. Mr. Garrett was placed under arrest on this charge. (Doc. No. 51, Jenkins Aff., ¶ 7).

*Spurlock.* However, the *Darrah* Court ultimately concluded that a cause of action must be recognized under *Spurlock.* We agree that we are obliged to follow *Spurlock* and recognize a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment.

*Thacker,* 328 F.3d at 258–59 (citations omitted).

■ Despite Jenkins' and Perkins Township's contention to the contrary, this Court will follow *Spurlock.* Nevertheless, as with Plaintiff's unlawful arrest claim, Jenkins, and therefore Perkins Township, are not liable for malicious prosecution.

"Although this Court has yet to resolve the elements of a federal malicious prosecution claim, its clear that a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.' " *Id.* at 259 (quoting *Darrah v. City of Oak Park,* 255 F.3d 301, 312 (6th Cir.2001)). Shortly thereafter, the Sixth Circuit stated "[a] claim of malicious prosecution is actionable under § 1983 where all elements of the state tort law are present and probable cause was lacking as defined by Fourth Amendment jurisprudence." *Akers v. Bishop,* 65 Fed.Appx. 952, 954, 2003 WL 21019171 (6th Cir.2003). Because it is without a doubt that there was probable cause, and as set forth below, Garrett cannot satisfy the requisite elements of malicious prosecution under Ohio law, Plaintiff's claim of malicious prosecution pursuant to § 1983 must fail.

2. Fisher–Titus, Hatfield and Joiner

■ Fisher–Titus, Hatfield and Joiner persuasively contend that they are not state actors, and therefore, cannot be held liable under § 1983. "A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir.2003)

(quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)).

This circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state . . ." The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e. through state regulation or contract) between the state and the private actor so that the action may be attributed to the state.

*Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir.1995) (citations omitted).

The Sixth Circuit [has] held that a " . . . private hospital was not a state actor for purposes of section 1983 even though the hospital received public funding, was subject to state regulation, had two public officials serving on its board of trustees, and had been purchased by the county and then leased back to the hospital's board of trustees through a financial arrangement authorized by state statute."

*Black v. Barberton Citizens Hosp.,* 8 F.Supp.2d 697, 700 (N.D.Ohio 1998) (quoting *Crowder v. Conlan,* 740 F.2d 447, 450–453 (6th Cir.1984)).

■ Analogously, Fisher–Titus cannot be characterized as a state actor under either the public function or nexus tests. Sharon Harwood ("Harwood"), Risk Manager for Fisher–Titus, maintains "[t]hat

Fisher–Titus is a private, non-profit hospital." (Doc. No. 49, Harwood Aff., ¶ 3). Moreover, Harwood asserts:

> The state of Ohio does not exercise any control over hospital functions or administration, with the limited exception that Fisher–Titus is bound by law to comply with pertinent legislation and additional administrative rules.

*Id.* at ¶ 4.

The record is also devoid of evidence demonstrating that Fisher–Titus was significantly encouraged or coerced to take any actions to be a state actor under the state compulsion test. Likewise, neither Hatfield nor Joiner may be characterized as state actors.

> The mere fact that the individual defendants were complainants and witnesses in an action which itself was prosecuted under the color of law does not make their complaining or testifying other than what it was, *i.e.,* the action of private persons not acting under the color of law.

*Grow v. Fisher,* 523 F.2d 875, 879 (7th Cir.1975) (citations omitted).

Here, Hatfield testifies that she was a witness at Garrett's trial, and did not request that Plaintiff be charged. (Doc. No. 59, Ex. A, Hatfield Aff., ¶¶ 18–19). She also maintains that she had no contract with the State nor was she coerced regarding Garrett's arrest and conviction. *Id.* at ¶ 22. Likewise, Joiner, who was a witness at Plaintiff's trial, contends that he did not personally request that criminal charges be brought or complaint filed against Plaintiff, or was coerced by the State to testify against him. (Doc. No. 61, Ex. A, Joiner Aff., ¶¶ 1–2, 7). Even assuming *arguendo* that Fisher–Titus, Hatfield and Joiner are state actors, they are entitled to summary judgment on Plaintiff's § 1983 claims on the same underlying basis as Jenkins and Perkins Township.

### C. PLAINTIFF'S STATE LAW CLAIMS

#### 1. Exercise of Supplemental Jurisdiction

■■■ The Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Indeed, 'if all federal claims are dismissed before trial, ... the state claims [generally] should be dismissed.'" *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 233 (6th Cir.1997) (citations omitted). Dismissal is without prejudice. *Whittington v. Milby,* 928 F.2d 188, 194 (6th Cir.1991); *Collard v. Kentucky Board of Nursing,* 896 F.2d 179, 184 (6th Cir. 1990).

■■■ On the other hand, a district court does have discretion to exercise supplemental jurisdiction in the interests of judicial economy and to avoid unneeded litigation. *Taylor v. First of Am. Bank–Wayne,* 973 F.2d 1284, 1287–88 (6th Cir. 1992); *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412–13 (6th Cir.1991). In *Taylor,* the court held that the district court did not abuse its discretion in retaining jurisdiction where the case had been on the docket for two years, discovery had been completed and the issues for summary judgment had been fully briefed. *Taylor,* 973 F.2d at 1288. Likewise, in *Aschinger,* the court found no abuse of discretion in deciding to maintain jurisdiction over the plaintiff's remaining state law claims where similar factual determinations were a predicate for deciding both the federal and state claims, discovery was closed and a significant amount of resources had been spent. *Aschinger,* 934 F.2d at 1413. The Court finds that the instant matter presents similar circumstances, and in its discretion shall exercise jurisdiction to decide Plaintiff's state law claims.

### 2. False Arrest

 "The requisite elements for false arrest are (1) a detention of the person, and (2) an unlawful detention. The key to an inquiry into the legality of an arrest and detention is the validity of the arrest warrant." *Faulkner v. Faulkner,* No. S–99–008, 2000 WL 5910, at *1, 2000 Ohio App. LEXIS 19, at *2 (Ohio App. 6th Dist. Jan. 7, 2000). "[A] proper warrant issued by a court is a complete defense to an action for false arrest. A later finding that an otherwise proper arrest was not justified does not render it 'void' from its inception." *Aaron v. Venator Group,* No. E–03–001, 2003 WL 22117579, at *4, 2003 Ohio App. LEXIS 4393, at *10 (Ohio App. 6th Dist. Sept. 12, 2003) (citations omitted).

> The essence of the tort of false arrest is the depriving of a person of his or her liberty without lawful justification. Specifically, a plaintiff must show only that he or she was detained and that detention was unlawful. The tort does not require proof of malice, motive or lack of probable cause.

*Tucker v. Kroger Co.,* 133 Ohio App.3d 140, 726 N.E.2d 1111, 1115 (Ohio App. 10th Dist.1999). Claims of false arrest and false imprisonment are assessed under Fourth amendment standards. *Walsh v. Erie County Dep't of Job & Family Servs.,* 240 F.Supp.2d 731, 765 (N.D.Ohio 2003) (citing *Harvey v. Horn,* 33 Ohio App.3d 24, 514 N.E.2d 452, 455 (Ohio App. 10th Dist. 1986)). "To escape liability for false arrest or false imprisonment, the defendant has the burden of proving legal justification for his or her actions." *Id.* (citing *Isaiah v. Great Atlantic & Pacific Tea Co.,* 111 Ohio App. 537, 174 N.E.2d 128, 131 (Ohio App. 9th Dist.1959)). Not only was there a

warrant issued by the Sandusky Municipal Court (Doc. No. 52, attached), Plaintiff's state law claim for false arrest fails for the reasons discussed above with respect to Garrett's § 1983 unlawful arrest claim.[4]

### 3. Malicious Prosecution

 "[T]he elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.,* 53 Ohio St.3d 142, 559 N.E.2d 732, 736 (1990). Malice may be inferred from a lack of probable cause. *Melanowski v. Judy,* 102 Ohio St. 153, 131 N.E. 360, 361 (1921). "Probable cause is the real gist of the action." *Id.* Probable cause is defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Id.; see also Burkholder v. Emahiser,* No. OT–01–020, 2002 WL 444969, at *3, 2002 Ohio App. LEXIS 1317, at *9 (Ohio App. 6th Dist. Mar. 22, 2002).

 "It is important to recognize that probable cause may exist despite the fact that no crime actually occurred." *Doty v. Marquis,* No. 99 JE 9, 2000 WL 1486582, at *2, 2000 Ohio App. LEXIS 4417, at *6 (Ohio App. 7th Dist. Sept. 22, 2000). One need not even have evidence to ensure a conviction. *Deoma v. Shaker Heights,* 68 Ohio App.3d 72, 587 N.E.2d 425, 428 (1990) (citing *Epling v. Pacific Intermountain Express Co.,* 55 Ohio App.2d 59, 379 N.E.2d 239, 241–42 (1977)).

---

**4.** Fisher–Titus also argues that Plaintiff's complaint only asserts that law enforcement officials falsely arrested him, and "a cause of action for false arrest can only be brought against the persons making the arrest, or their employers." *Hamilton v. Best Buy,* No. 19001, 2002 WL 242542, *1, 2002 Ohio App. LEXIS 689, at *5 (Ohio App.2d Dist. Feb. 15, 2002).

The return of an indictment by a grand jury raises a rebuttable presumption that probable cause exists. *"In order to rebut this presumption, plaintiff was required to produce 'substantial' evidence that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise 'significantly' irregular."* Reinoehl v. Trinity Universal. Ins. Co., 130 Ohio App.3d 186, 719 N.E.2d 1000, 1007 (1998) (citations omitted) (emphasis added). Moreover, "a proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." *Ash v. Ash,* 72 Ohio St.3d 520, 651 N.E.2d 945, 947 (1995).

 Garrett's contention that his acquittal on the murder charge raises a genuine issue of material fact as to probable cause and demonstrates that the complaint filed in municipal court terminated in his favor is baseless. "[G]rand juries have plenary and inquisitorial powers and may lawfully upon their own motion originate charges against offenders." *State v. Klingenberger,* 113 Ohio St. 418, 149 N.E. 395, 397 (1925); *see also State v. Jenkins,* No. 02CA5, 2003 WL 894807, at *3, 2003 Ohio App. LEXIS 1007, at *11 (Ohio App. 4th Dist. Feb. 5, 2003). "The grand jury does not exceed its authority by returning an indictment that differs from [an] initial complaint." *State v. Rembert,* No.79297, 2001 WL 1612087, at *3 n. 1, 2001 Ohio App. LEXIS 5532, at *10 n. 1 (Ohio App. 8th Dist. Dec. 13, 2001). Plaintiff cannot segregate the murder charge from the other charges in the indictment to show that the prosecution terminated in his favor.

Moreover, the fact that the grand jury met in secret does not in and of itself provide evidence of significant irregularity.

"In Ohio, the long-standing tradition of grand jury secrecy is well pronounced in case law." *State v. Greer,* 66 Ohio St.2d 139, 420 N.E.2d 982, 987 (1981). In addition, Garrett's assertions, without more, that neither he nor Denise's doctors testified before the grand jury, the State bypassed a preliminary hearing or that Denise' autopsy was not completed by the grand jury's initial meeting, do not represent substantial evidence to rebut the presumption of probable cause. Plaintiff's exoneration of murder is also insufficient.

> [T]he presumption does not evaporate when the defendant is subsequently exonerated, because, in all malicious prosecution cases, the defendant was exonerated. The quantum of proof for probable cause is significantly less than the proof beyond a reasonable doubt required for conviction. Thus, it is totally possible to have probable cause but no conviction.

*Bellino v. Superior Beverage Co. Inc.,* No.2000–T–0100, 2002 WL 5351, at *6, 2001 Ohio App. LEXIS 6007, at *20 (Ohio App. 11th Dist. Dec. 28, 2001).[5]

While Hatfield did file suit against Denise's doctors for medical malpractice (Doc. No. 52, attached), this allegation presents a defense to a charge of murder based on a lack of proximate cause. *See State v. Johnson,* 56 Ohio St.2d 35, 381 N.E.2d 637, 640 (1978); *see also Lewis v. Alexander,* 11 F.3d 1349, 1350 (6th Cir.1993). In addition, the *Johnson* court stated:

> It is the general rule that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved [her] life. *This rule has been qualified where there has been a gross*

---

**5.** Jenkins maintains that his reliance on Barylski's advice is a complete defense to this claim. *See Frost v. O'Kross,* 22 Ohio App. 174, 153 N.E. 879 (1926); *see also Matuszw-*

*ski v. Hills Dep't Store,* No. 3792, 1987 WL 19486, at *2, 1987 Ohio App. LEXIS 9339, at *4–5 (Ohio App. 8th Dist. Oct. 30, 1987).

*or willful maltreatment of the patient by medical personnel, which is shown to have been an independent intervening cause of the patient's death.*

*Johnson,* 381 N.E.2d at 640 (citations omitted) (emphasis added).

Hatfield's complaint sounds in ordinary negligence only, and is of no value to Garrett.

#### 4. Intentional Infliction of Emotional Distress

▮▮▮▮▮ To establish a claim for the intentional infliction of emotional distress requires Plaintiff to prove "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgmt., Inc.,* 71 Ohio St.3d 408, 644 N.E.2d 286, 289 (1994); *see also Maxwell v. GTE Wireless Serv. Corp.,* 121 F.Supp.2d 649, 660 (N.D.Ohio 2000); *Miller v. Premier Indus. Corp.,* 136 Ohio App.3d 662, 737 N.E.2d 594, 603 (2001). To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20,*

*Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983); *see also Hillman v. Safeco Ins. Co. of Am.,* 190 F.Supp.2d 1029, 1039 (N.D.Ohio 2002).

▮▮▮▮ "A plaintiff claiming severe and debilitating emotional distress must present some 'guarantee of genuineness' in support of his or her claim to prevent summary judgment." *Powell v. Grant Med. Ctr.,* 148 Ohio App.3d 1, 771 N.E.2d 874, 878 (2002) (citations omitted). Such proof may be made through expert testimony or lay witnesses acquainted with the plaintiff's emotional makeup and changes thereto. *Id.* Garrett offers neither. Fisher–Titus' fulfillment of statutory obligations to report and note in Denise's medical records injuries reasonably believed to be the result of physical violence and/or domestic violence is anything but extreme or outrageous. *See* OHIO REVISED CODE §§ 2921.22(A)-(B), F(1).[6] It is also clear that none of the other Defendants' actions were extreme or outrageous.

#### 5. Abuse of Process

▮▮▮▮ "To establish a claim for abuse of process under Ohio law, a plaintiff must allege the following: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt

---

6. (A) No person, knowing that a felony has been or is being committed, shall knowingly fail to report such information to law enforcement authorities.

(B) Except for conditions that are within the scope of division (E) of this section, no physician, limited practitioner, nurse, or other person giving aid to a sick or injured person shall negligently fail to report to law enforcement authorities any gunshot or stab wound treated or observed by the physician, limited practitioner, nurse, or person, or any serious physical harm to persons that the physician, limited practitioner, nurse, or person knows or has reasonable cause to

believe resulted from an offense of violence.

(F)(1) Any doctor of medicine or osteopathic medicine, hospital intern or resident, registered or licensed practical nurse, psychologist, social worker, independent social worker, social worker assistant, professional clinical counselor, or professional counselor who knows or has reasonable cause to believe that a patient or client has been the victim of domestic violence, as defined in section 3113.31 of the Revised Code, shall note that knowledge or belief and the basis for it in the patient's or client's records.

OHIO REVISED CODE §§ 2921.22(A)-(B), F(1).

to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Hahn v. Star Bank,* 190 F.3d 708, 718 (6th Cir.1999) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co.,* 68 Ohio St.3d 294, 626 N.E.2d 115, 116 (1994)). A proceeding is not perverted to accomplish an ulterior purpose "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* (quoting *Yaklevich,* 626 N.E.2d at 118 n. 2).

> In an abuse of process case, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or payment of money, by the use of the process as a threat or club." Simply, abuse of process occurs where someone attempts to achieve through the use of the court that which the court is itself powerless to order.

*Preferred Props. v. Indian River Estates,* 276 F.3d 790, 801–02 (6th Cir.2002) (quoting *Robb v. Chagrin Lagoons Yacht Club, Inc.,* 75 Ohio St.3d 264, 662 N.E.2d 9,14 (1996)).

■ The record before this Court utterly fails to support for this claim. Fisher–Titus was not involved in the decision to bring charges or prosecute Garrett, and has neither sought nor obtained any advantage or collateral benefit due to such actions. (Doc. No. 49, Harwood Aff., ¶¶ 5–7). Neither Hatfield nor Joiner requested that charges be brought against Garrett or had any ulterior purpose in communicating with prosecutors or testifying against Plaintiff. (Doc. No. 59, Ex. A, Hatfield Aff., ¶¶ 19–20; Doc. No. 61, Joiner Aff., ¶¶ 2–3). Jenkins also maintains that he had no ulterior purpose. (Doc. No. 51, Jenkins Aff., ¶ 13).

6. Slander and Libel

■ "To state a claim under Ohio law for defamation, the plaintiff must show that there was: 1) a false statement, 2) defamatory to the plaintiff, 3) published to a third party, 4) by a defendant who was at least negligent, and 5) damaging to the plaintiff's reputation." *Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 312 (6th Cir.2000) (citing *Lansdowne v. Beacon Journal Publ'g Co.,* 32 Ohio St.3d 176, 512 N.E.2d 979, 984 (1987)). "Generally, the essential elements of a defamation action, whether slander or libel," are the same. *Daubenmire v. Sommers,* 156 Ohio App.3d 322, 805 N.E.2d 571, 585 (2004). "A plaintiff must prove a defendant's negligence by clear and convincing evidence, but need only prove the other elements by a preponderance of the evidence." *Parry,* 236 F.3d at 312 (citing *Lansdowne,* 512 N.E.2d at 984).

■ Ohio affords an absolute privilege "to statements made in a judicial proceeding that are related to the proceeding's purpose." *Snyder v. Ag Trucking, Inc.,* 57 F.3d 484, 490 (6th Cir.1995); *see also Hecht v. Levin,* 66 Ohio St.3d 458, 613 N.E.2d 585, 587 (1993). "[A]n affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding." *DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 634 N.E.2d 203, 210 (1994).[7] Moreover, and

---

7. *DiCorpo* may not extend to statements given to police. *Compare Lee v. City of Upper Arlington,* No. 03AP–132, 2003 WL 23024437, at *4, 2003 Ohio App. LEXIS 6485, at *11–12 (Ohio App. 10th Dist. Dec. 30, 2003) (extending *DiCorpo* to statements made to police) with *Scott v. Patterson,* No. 81872, 2003 WL 21469363, at *2, 2003 Ohio App. LEXIS 3043, at *7 (Ohio App. 8th Dist. June 26, 2003) (distinguishing between statements given to police at a crime scene and sworn affidavits given to prosecutors).

perhaps most importantly, truth is a complete defense to a defamation action. *See* OHIO REVISED CODE § 2739.02; *see also Ed Schory & Sons v. Francis,* 75 Ohio St.3d 433, 662 N.E.2d 1074, 1083–84 (1996).

■ Clearly, to the extent that Joiner, Hatfield or Fisher–Titus' statements were offered as part of judicial proceedings, this claim must fail. Without contradiction, Joiner, Hatfield and Jenkins also maintain that they made only truthful statements in relation to events regarding Denise's death and Garrett. (Doc. No. 61, Joiner Aff., ¶ 5; Doc. No. 59, Ex. A, Hatfield Aff., ¶ 21; Doc. No. 51, Jenkins Aff., ¶ 14).[8] In addition to asserting the truthfulness of any statements made, Fisher–Titus is also immune from liability for any statements made to prosecutors, and in fulfillment of its obligations under O.R.C. §§ 2921.22(A)-(B), F(1).[9]

7. Civil Conspiracy and Plaintiff's Claim of Organizational Liability Against Fisher–Titus

■ Civil conspiracy is a tort defined "as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' " *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 650 N.E.2d 863, 866 (1995) (quoting *LeFort v. Century 21–Maitland Realty Co.,* 32 Ohio St.3d 121, 512 N.E.2d 640, 645 (1987)). "An underlying unlawful act is required before

a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 700 N.E.2d 859, 868 (1998) (citing *Gosden v. Louis,* 116 Ohio App.3d 195, 687 N.E.2d 481, 496 (1996)). There is no requirement of "an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Gosden,* 687 N.E.2d at 496. "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without reasonable or lawful excuse, to the injury of another.' " *Williams,* 700 N.E.2d at 868 (citations omitted).

■ Plaintiff claims that the underlying act was obstruction of justice, pursuant to O.R.C. § 2921.32, and other unlawful associated acts. Obstruction of justice cannot support a claim for civil conspiracy as "a separate civil cause of action must be available to bring a civil claim based upon a criminal act," *McNichols v. Rennicker,* No.2002 AP 04 0026, 2002 WL 31883700, at *3, 2002 Ohio App. LEXIS 7023, at *10 (Ohio App. 5th Dist. Dec. 18, 2002). It is a statutory crime for which no civil cause of action exists under Ohio law. *Culberson v. Doan,* 125 F.Supp.2d 252, 279 (S.D.Ohio 2000). Since Plaintiff's claim is premised on Fisher–Titus' employees purported obstruction of justice, this also disposes of Garrett's organizational liability claim pursuant to O.R.C. § 2901.23.

---

8. The Court need not consider Hatfield's argument that Plaintiff, a criminal defendant convicted of domestic violence, is a limited public purpose figure who must prove that any purported defamatory statements were made with actual malice. *See Talley v. WHIO TV–7,* 131 Ohio App.3d 164, 722 N.E.2d 103, 106–07 (1998).

9. No disclosure of information pursuant to this section gives rise to any liability or recrimination for breach of privilege or confidence.

OHIO REVISED CODE § 2921.22(H). *See Biddle v. Warren Gen. Hosp.,* 86 Ohio St.3d 395, 715 N.E.2d 518, 524 (1999) (maintaining that no liability results from a physician's report made pursuant to law); *see also* (Ohio *Lowe v. Fiorini,* No. CA–96–38, 1997 Ohio App. LEXIS 3953, at *4 (Ohio Ct.App. 5th Dist. Aug. 21, 1997)) (asserting that § 2921.22(H) affords immunity to persons reporting that a felony has been committed to a law enforcement agency).

Accordingly, Defendants Fisher–Titus', Perkins Township and Jenkins', Hatfield's and Joiner's motions for summary judgment are granted as to all of Plaintiff's claims.[10] Jenkins is entitled to summary judgment on Plaintiff's unlawful arrest claim pursuant to § 1983 based on qualified immunity.

#### CONCLUSION

For the reasons stated above, Defendant Fisher–Titus' motion for summary judgment (Doc. No. 49), Defendants Perkins Township and Jenkins' motion for summary judgment (Doc. No. 51), Defendant Hatfield's motion for summary judgment (Doc. No. 59), and Defendant Joiner's motion for summary judgment (Doc. No. 61), are granted. Jenkins is entitled to summary judgment on Plaintiff's unlawful arrest claim pursuant to § 1983 based on qualified immunity.

IT IS SO ORDERED.

#### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant Fisher–Titus Medical Center's motion for summary judgment (Doc. No. 49) is granted.

FURTHER ORDERED THAT Defendants Perkins Township and Al Jenkins' motion for summary judgment (Doc. No. 51) is granted.

FURTHER ORDERED THAT Defendant Rebecca Hatfield's motion for summary judgment and supplement thereto (Doc. Nos. 59 & 63) is granted.

FURTHER ORDERED THAT Defendant Gary Joiner's motion for summary judgment (Doc. No. 61) is granted.

DAVID A. KATZ, District Judge.

---

10. Even assuming *arguendo* that Plaintiff's state law claims had merit, Jenkins persuasively argues that his actions were not with malicious purpose, in bad faith, or in a wanton or reckless manner, and is therefore immune from liability under O.R.C. § 2744.03(A)(6). Since police services are a governmental function, Perkins Township maintains that it is also immune from liability. *See* OHIO REVISED CODE § 2744.02(A)(1) and § 2744.01(C)(2).