MILLER, Appellant,

v.

PREMIER INDUSTRIAL CORP., et al. Appellees.

[Cite as *Miller v. Premier Indus. Corp.* (2000), 136 Ohio App.3d 662.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75102.

Decided March 16, 2000.

664

*Wayne P. Marta,* for appellant.

*Nicola, Gudbranson & Cooper, L.L.C.,* and *Matthew T. Fitzsimmons, III,* for appellees.

---

TIMOTHY E. McMONAGLE, Presiding Judge.

Plaintiff-appellant, Ricky L. Miller, appeals the decision of the Cuyahoga County Common Pleas Court granting summary judgment in favor of defendants-appellees, Premier Farnell Corp., D–A Lubricant Company, Inc. and Maintenance, Inc. For the reasons that follow, we affirm.

I

On April 23, 1984, appellee Maintenance, Inc. hired appellant as a process operator/equipment technician at its production facility in Wooster, Ohio.[1] The facility makes industrial sealants and lubricants. Appellant's duties as a process operator/equipment technician included production, packaging and warehousing functions in preparing products for shipment to customers, and performing maintenance and repairs on plant equipment. One of the essential functions of appellant's position as process operator/equipment technician was to frequently lift loads of forty to sixty-five pounds. Appellant admitted that he frequently lifted such loads in his job as a process operator.

---

1. Maintenance contends that it is an unincorporated division of Appellee D–A Lubricant. Although Maintenance does not explain the relationship between D–A Lubricant and Premier Farnell Corp., Maintenance contends that appellant has never been employed by Premier. Therefore, Maintenance contends that D–A Lubricant is the only proper party to this action. Appellant, on the other hand, contends that D–A Lubricant and Maintenance are subsidiaries of Premier and that "the formal, legal boundaries of Defendant–Appellee Premier Industrial Corporation and its subsidiaries are wholly ignored in the daily operations of these entities." Appellant contends that this "corporate incest obfuscate[s] legal boundaries beyond fair or meaningful distinctions" and therefore, he was employed by all three appellees.

Appellant originally injured his back in 1977 while working for another employer. After beginning his employment with Maintenance, appellant injured his back at work on four separate occasions. In 1987, appellant injured his back in a fall from a ladder. On April 20, 1995, he reinjured his back while moving bags of sand. He injured it again on July 28, 1995, while stacking pails of sealant, and again on January 5, 1996, when he was stacking pails of sealant. Appellant filed workers' compensation claims with respect to these incidents; the claim arising from the fall from the ladder was allowed but the other claims were denied.

Being apprised that appellant had a serious back problem, on January 12, 1996, Maintenance hired Bradley Johnson as a temporary laborer with no benefits to cover appellant's process operator/equipment technician position. In February 1996, Johnson began receiving health insurance and other full-time benefits from Maintenance. Johnson is younger than appellant.

On March 4, 1996, Charlotte Kawczk, a benefits administrator at Maintenance, sent appellant a letter, which was accompanied by a form that would allow appellant to apply for benefits under appellees' disability insurance. Appellant was eligible for sickness and accident benefits in the amount of half a week's pay for up to six months. Appellant never returned the forms and never applied for the benefits.

Appellant underwent back surgery on March 6, 1996. Three days later, while he was recuperating in the hospital, Bradley Eagle, one of appellant's coworkers, informed appellant that he was quitting his job as a telemarketer at Maintenance and encouraged appellant to apply for the telemarketing position that he was vacating. Appellant informed Robert Huebner, director of operations for Maintenance, that he was interested in the telemarketing position but was advised by Huebner in April 1996, that the position had been filled by Brenda Wetz. Wetz is younger than appellant.

On June 3, 1996, appellant's surgeon informed Maintenance that appellant was permitted to return to work with a ten-pound weight lifting restriction.

On June 17, 1996, prior to resuming work, appellant met with Huebner and Dale Bowman, Maintenance's personnel director, at Maintenance's facility. Appellant testified in his deposition that in this meeting he asked to be transferred to the telemarketing department to fill a position that was being temporarily vacated by an employee going on maternity leave. According to appellant, Bowman responded that the job was unsuitable for him because it involved a substantial amount of sitting.

Appellant returned to work on June 20, 1996. According to appellees, appellant was not able to perform the duties of a process operator/equipment techni-

cian with the ten-pound weight lifting restriction. In an effort to keep appellant gainfully employed until the weight-lifting restriction was lifted, however, appellees put together some light duty tasks for appellant to perform. These light duty tasks included cleaning toilets, emptying wastepaper baskets and trimming hedges. Appellant received the same rate of pay and benefits for this work that he did while performing the process operator/equipment technician position.

In August 1996, appellant performed the process operator/equipment technician job for two weeks when he substituted for Robert Weygandt during his vacation. According to appellant, he performed each of the essential functions of the job with only a slight accommodation from Bradley Johnson, who would periodically leave his work station to help appellant lift whatever could not be lifted mechanically.

When appellant's ten-pound weight lifting restriction was not lifted after several months, Maintenance was compelled to lay appellant off on September 24, 1996, due to insufficient light duty work to keep him employed. Notwithstanding the lay-off, Maintenance continued to carry health insurance coverage for appellant and his family and paid appellant's share of the premiums for the insurance until December 1997. Maintenance also informed appellant that he could return to his former position as a process operator/equipment technician when the ten-pound weight lifting restriction was lifted. Appellant never responded to this offer.

In 1992, while working at Maintenance, appellant formed an asphalt seal-coating business named C.J. Miller & Sons. After his back surgery in March 1996, appellant worked for C.J. Miller & Sons performing tasks that, by appellant's own admission, involved lifting in excess of ten pounds. Appellant testified that he is earning more money now from his seal-coating business than he earned while working for Maintenance.

On January 26, 1997, appellant filed a complaint against appellees, asserting claims for handicap discrimination, age discrimination, workers' compensation retaliation and intentional infliction of emotional distress.

At a pretrial in July 1997, the trial court set the discovery deadline for November 21, 1997. On December 5, 1997, the trial court granted the parties' joint motion to extend the discovery deadline to January 30, 1998.

On January 30, 1998, appellant filed a motion to compel and enlarge discovery. In his motion, appellant sought an order compelling the depositions of five employees of Maintenance and extending the discovery deadline to permit the depositions. On March 5, 1998, the trial court granted appellant's motion to compel and extended the discovery cutoff to March 20, 1998.

On May 15, 1998, appellees filed their motion for summary judgment. Appellant filed his brief in objection to appellees' motion for summary judgment on June 17, 1998.

On July 15, 1998, appellant filed his second motion to compel, seeking an order from the trial court compelling appellees to respond to appellant's first set of interrogatories and first request for production of documents. In their response to appellant's discovery requests, served on May 8, 1998, appellees had objected to answering any interrogatories or providing documents, contending that their responses to the interrogatories and document requests, which appellant had served on January 29, 1998, one day before the original discovery deadline, were not due until after the discovery deadline and, therefore, appellant's requests were untimely.

On July 27, 1998, the trial court granted appellees' motion for summary judgment. On July 29, 1998, the trial court denied appellant's second motion to compel discovery as moot.

Appellant timely appealed, assigning two assignments of error for our review:

"I. The trial court erred in granting the defendant–appellees' motion for summary judgment ('MSJ').

"II. The trial court erred in overruling plaintiff–appellant Miller's second motion to compel discovery."

II

In his first assignment of error, appellant contends that the trial court erred in granting appellees' motion for summary judgment because there are genuine issues of material fact regarding each of appellant's claims.

This court reviews the lower court's grant of summary judgment *de novo* in accordance with the standards set forth in Rule 56(C) of the Ohio Rules of Civil Procedure. *N. Coast Cable v. Hanneman* (1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875, 878–879. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record that support the requested judgment. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164, 1171–1172. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. *Id.* See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can

reach only a conclusion that is adverse to that party. *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204; *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 473, 692 N.E.2d 198, 203–204; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273. Any doubts must resolved in favor of the non-moving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

A. Handicap Discrimination Claim

■ To establish a prima facie claim of handicap discrimination under R.C. 4112.02(A), the person seeking relief must establish that he or she 1) was handicapped 2) suffered adverse employment action, at least in part, because of the handicap and 3) could safely and substantially perform the essential functions of the job in question. See, *e.g., Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204, 205–206; *Hood v. Diamond Prod.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus; *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 333–334, 496 N.E.2d 478, 480–481; *Csejpes v. Cleveland Catholic Diocese* (1996), 109 Ohio App.3d 533, 536–537, 672 N.E.2d 724, 726–727.

R.C. 4112.01(A)(13) defines "handicap" as: "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

■ This three-pronged definition proscribes an employer's discrimination against any employee whenever the impairment that substantially limits one or more of the employee's major life activities is actual and continuing (the "objective" prong), whenever a record or history of an impairment remains, but the impairment no longer exists (the "historical" prong), and whenever the employer regards, or perceives, the employee as having an impairment that substantially limits one or more major life activities, but the impairment itself may or may not have actually existed or may or may not have substantially limited any of the employee's major life activities (the "subjective" prong). *Csejpes v. Cleveland Catholic Diocese* (1996), 109 Ohio App.3d 533, 672 N.E.2d 724; *Retterer v. Whirlpool Corp.* (1996), 111 Ohio App.3d 847, 860–861, 677 N.E.2d 417, 425–426; *Degnan v. Goodwill Indus.* (1995), 104 Ohio App.3d 589, 662 N.E.2d 894; *Potocnik v. Sifco Indus.* (1995), 103 Ohio App.3d 560, 569–570, 660 N.E.2d 510, 515–516; *Cox v. Commercial Parts & Serv.* (1994), 96 Ohio App.3d 417, 422–423, 645 N.E.2d 123, 125–127.

■ As made clear in appellant's reply brief and in oral argument, appellant does not claim the protection of Ohio's handicap discrimination statute on the basis that he had a physical impairment that actually limited any one or more of his major life activities in a substantial way. Rather, appellant contends that he deserves the protection of Ohio's handicap discrimination law because appellees regarded his physical impairment as a substantial limitation upon certain of his major life activities and discriminated against him on that basis.

In support of his contention that appellees perceived him as having a disability, appellant argues that appellees hired his replacement, Bradley Johnson, only one week after his last injury on January 5, 1996, and told Johnson that they anticipated that appellant would not be returning to work for a long time, if ever. Appellant further contends that it is apparent that appellees had "written him off" due to his back condition because none of appellees' management employees inquired about his condition or prognosis between the date of his injury and his surgery in March 1996; but in March 1996, appellees sent appellant a form to apply for disability · benefits. Appellant also notes that he did not get the telemarketer's position that became vacant in March 1996, when Bradley Eagle quit and again in June 1996, when an employee in that department went on maternity leave. Finally, appellant contends that between June 1996, when he returned to work, and September 1996, when he was laid off, appellees never had appellant's "functional capacity" reevaluated because they regarded appellant as handicapped and therefore saw no need for any such reevaluation.

We do not find this evidence indicative that appellees regarded appellant as handicapped. First, when Maintenance hired Bradley Johnson in January 1996, no one, including appellant, knew if or when appellant would be back to work. Accordingly, appellees' alleged statement to Johnson that they did not know when or if appellant would be returning to work was accurate.

Furthermore, appellant was not released back to work until June 3, 1996. Therefore, the fact that in March 1996 appellees sent appellant a form to apply for the disability benefits that he was entitled to is of no moment.

The fact that appellant did not get the telemarketer job similarly does not show that appellees perceived appellant to be disabled. The telemarketer position that became open when Bradley Eagle quit his job at Maintenance was vacated and filled by Brenda Wertz before appellant returned to work after his surgery. Moreover, even appellant's back surgeon testified that appellant was not physically ready to return to a desk job, such as the telemarketer position, when he returned to work after his back surgery. Thus, appellant was not a viable candidate for the telemarketer position that became available in June when an employee went on maternity leave.

Finally, the fact that appellees did not have appellant's functional capacity reevaluated before they laid him off does not indicate that appellees regarded appellant as having a disability. Significantly, appellant did not ever request any reasonable accommodation from appellees for his process operator position nor did he ever request that appellees reevaluate his functional capacity. Moreover, at the same time that appellant was contending to appellees that he had a ten-pound weight lifting restriction, appellant, by his own admission, was working in his own business lifting weights of substantially more than ten pounds.

There is no evidence that appellees regarded appellant as being disabled and discriminated against him on that basis. To the contrary, they merely abided by his doctor's orders, assumed he would eventually return to his former position once his back fully healed, and left his job open for him so that he could resume his process operator duties as soon as his weight lifting restriction was lifted. Moreover, appellees created light duty assignments for appellant to keep him employed on a full-time basis at the same rate of pay and benefits as his process operator/equipment technician position until the restriction was lifted. When the restriction was not lifted, however, and there was no more temporary light duty work to keep appellant employed, appellees were forced to lay him off. Because there is no evidence that appellees regarded appellant as disabled, appellant failed to demonstrate that he was handicapped within the definition set forth in R.C. 4112.01(A)(13).

■ Moreover, even if appellant could show that he was handicapped pursuant to R.C. 4112.01(A)(13), he still fails to set forth a prima facie claim of handicap discrimination because he cannot show that he could safely and substantially perform the essential functions of the process operator/equipment technician job. The record is clear that the position of process operator/equipment technician requires the frequent lifting of loads significantly in excess of ten pounds. The essential functions of the job cannot be performed with a ten-pound weight lifting restriction. Accordingly, appellant, by his own doctor's orders, was not qualified to perform the job at the time of his termination.

■ Appellant contends, however, that he could substantially perform the process operator/equipment technician job with the assistance of another worker to do the heavy lifting. Appellant points out that for two weeks in August 1996, when Robert Weygandt was on vacation, he performed the process operator job with only a slight accommodation from a coworker, who helped appellant lift the heavy loads. This solution, however, requires appellees to employ two people to do one job and would, according to appellees, seriously delay and unduly burden its production schedule. As such, it is not a reasonable accommodation.

Because appellant failed to establish a prima facie claim of handicap discrimination, the trial court properly granted appellees' motion for summary judgment regarding appellant's handicap discrimination claim.

### B. Age Discrimination Claim

■ Appellant contends that the trial court erred in granting appellees' motion for summary judgment regarding his age discrimination claim because appellees discriminated against him on the basis of his age, in violation of R.C. 4112.14, when they hired Bradley Johnson as a full-time process operator in January 1996 to perform his process operator duties and Brenda Wetz in May 1996 as a telemarketing specialist. Appellant contends that "nothing other than age" can account for these hiring decisions because he had the skills and experience to handle either position.

■ To establish a prima facie claim of age discrimination, appellant was required to demonstrate that he was 1) a member of the statutorily protected class (*i.e.,* age forty or older) 2) discharged 3) qualified for the position and 4) replaced by, or his discharge permitted the retention of, a person not belonging to the protected class. *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 672 N.E.2d 145; *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807.

Appellant failed to establish a prima facie claim of age discrimination. Maintenance hired Bradley Johnson in January 1996 as a temporary laborer because it needed someone to perform appellant's process operator duties. Appellant could have returned to his job as a process operator with Maintenance at any time after his ten-pound weight lifting restriction was lifted; however, appellant never advised Maintenance that the restriction was lifted and, therefore, he could not resume his former position. Accordingly, Maintenance's hiring of Johnson to perform a job that appellant was not qualified to perform is not indicative of age discrimination against appellant.

■ Similarly, appellant's claim that the hiring of Brenda Wetz is evidence of age discrimination is similarly misguided. When the telemarketing job became open in March 1996, appellant was in the process of undergoing and recovering from back surgery. No one knew how long appellant would be off work or if he would even return to work at all. Thus, due to his extended leave for back surgery, appellant was not an available candidate for the telemarketing position. Accordingly, the trial court did not err in granting summary judgment regarding appellant's age discrimination claim.

C. Workers' Compensation Discrimination Claim

■ Appellant also contends that there are genuine issues of material fact regarding his claim that appellees discriminated against him, in violation of R.C. 4123.90, because he pursued workers' compensation claims for his alleged work-related injuries.

R.C. 4123.90 provides, that "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."

It also expressly provides that in order to pursue a claim for workers' compensation discrimination, the employer who allegedly violated R.C. 4123.90 must receive written notice of the claimed violation within ninety days of the adverse employment action:

"[N]o action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within ninety days immediately following the discharge, demotion, reassignment, or punitive action taken."

It is undisputed that Maintenance has never received notice from appellant, or anyone acting on appellant's behalf, of a claimed violation of R.C. 4123.90.

Appellant argues, however, that the provision for notice found in R.C. 4123.90 is a requirement in the nature of a statute of limitations defense that appellees waived by not asserting in their answer to the complaint. We disagree.

As this court stated in *Longacre v. Penton Publishing Co.* (June 24, 1993), Cuyahoga App. No. 62927, unreported, 1993 WL 226491, "the failure to give the employer written notice of a claimed violation of R.C. 4123.90 within 90 days is a jurisdictional defect, and the action must be dismissed." See, also, *Barringer v. The Kroger Co.* (Feb. 23, 1996), Wood App. No. WD–95–088, unreported, 1996 WL 76066; *Cross v. Gerstenslager Co.* (1989), 63 Ohio App.3d 827, 830, 580 N.E.2d 466, 467–468.

■ Subject matter jurisdictional defects may be raised at any stage of the proceedings, cannot be waived by either party, and when called to the attention of the court, require the court to dismiss the action. *Id.* Because appellant never provided appellees with the 90–day notice required by R.C. 4123.90, the trial court did not have jurisdiction over appellant's claim and, therefore, properly granted summary judgment regarding this claim.

D. Intentional Infliction of Emotional Distress Claim

 Appellant also contends that the trial court erred in granting summary judgment regarding his claim against appellees for intentional infliction of emotional distress.

In *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 11 OBR 63, 463 N.E.2d 98, paragraph two of the syllabus, this court set forth the elements necessary to establish a prima facie case of intentional infliction of serious emotional distress:

"(a) * * * the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;

"(b) * * * the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community;

"(c) * * * the actor's actions were the proximate cause of the plaintiff's psychic injury; and

"(d) * * * the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it."

The Ohio Supreme Court, in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 426, 453 N.E.2d 666, 671, described what constitutes extreme and outrageous conduct:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' * * * The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

Appellant contends that the record establishes issues of material fact regarding each of the elements of an intentional infliction of emotional distress claim. With respect to the first two elements, appellant contends that appellees' conduct in denying his application for workers' compensation benefits when he was facing major surgery was "undeniably cruel" and their refusal to consider him for any job within their organization other than scrubbing toilets and taking out garbage was "unmistakably demeaning." Appellant contends that the last two elements have also been established because Dr. Robert W. Alcorn, the psychiatrist who performed a psychiatric evaluation of appellant in June 1998, concluded that

appellant had suffered a major depressive episode after he was laid off in September 1996. We disagree.

The facts of this case do not rise to the level of extreme and outrageous conduct required under Ohio law to prevail on a claim for intentional infliction of emotional distress. Rather, the record reflects that when appellant returned to work in June 1996 after his surgery, appellees did everything possible to keep him gainfully employed in light of his ten-pound weight lifting restriction. Acting under the assumption that appellant's weight lifting restriction would soon be lifted, appellees assigned appellant light duty tasks to perform until the restriction was removed. When the restriction was not lifted, and the light duty work ran out, appellees were compelled to lay appellant off. Appellees informed appellant, however, that he could return to work when his weight lifting restriction was lifted. Moreover, appellees continued to provide health insurance benefits for appellant and his family until December 1997, when appellant told Maintenance that he no longer wished to receive such coverage and had no interest in returning to work at Maintenance. Accordingly, the facts of this case do not support the extreme and outrageous conduct necessary to prevail on a claim for intentional infliction of emotional distress.

Furthermore, appellant did not present any evidence that he consulted medical or psychological experts for treatment of his alleged emotional distress. In response to appellees' interrogatory regarding all visits to medical or healthcare providers or practitioners for injuries or conditions alleged in the complaint, appellant did not indicate any treatment for his alleged emotional distress. Similarly, in response to appellees' document request regarding all documents that pertain to appellant's emotional distress claim, appellant stated that he had no such documents. Appellant's expert report, based on an examination of appellant conducted after appellees had submitted their motion for summary judgment and submitted three months after expert reports were due, does not cure this defect. See, e.g., *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248.

Because appellant failed to demonstrate genuine issues of material fact regarding each of the elements of a prima facie claim for intentional infliction of emotional distress, the trial court properly granted summary judgment on appellant's emotional distress claim as well.

Appellant's first assignment of error is therefore overruled.

### III

In his second assignment of error, appellant contends that he was denied due process when the trial court granted summary judgment in favor of appellees while his second motion to compel discovery was pending.

Appellant's first document production request was served on January 29, 1998, and consisted of twenty-one separate items of designated documents. Appellant argues that the relevance of many of the documents was founded upon the deposition testimony of appellees' personnel and "underlying each item was an element of proof necessary for [appellant's] establishment of his claims, or, alternatively, for his undermining of [appellees'] defenses." Furthermore, appellant contends that prior to the trial court's granting of summary judgment in favor of appellees, appellant had given notice to the trial court through his second motion to compel discovery of appellees' "frivolous objections and stubborn refusal" to produce the relevant documents requested. Accordingly, appellant contends, being thus informed, the trial court should not have entered summary judgment but should have ordered appellees to produce the relevant documents that appellant needed to respond to appellees' motion for summary judgment. We disagree.

Civ.R. 56(F) provides a litigant with the appropriate vehicle for seeking a continuance of a ruling on a summary judgment motion while the nonmoving party gathers necessary rebuttal evidence. Civ.R. 56(F) states:

"Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

A trial court is free to consider a motion for summary judgment where no continuance is requested or when such continuance is not supported by affidavits that would suggest the need for further discovery. *BFI Waste Sys. of Ohio v. Garfield Hts.* (1994), 94 Ohio App.3d 62, 74, 640 N.E.2d 227, 234–235, citing *Siegel v. D'Eramo* (1992), 80 Ohio App.3d 72, 608 N.E.2d 842; *Transam. Financial Serv. v. Stiver* (1989), 61 Ohio App.3d 49, 572 N.E.2d 149. A party who fails to comply with the provisions of Civ.R. 56(F) waives any error in a trial court's premature ruling on a motion for summary judgment. *BFI, supra,* citing *Benjamin v. Deffet Rentals* (1981), 66 Ohio St.2d 86, 20 O.O.3d 71, 419 N.E.2d 883; *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 87, 523 N.E.2d 902, 911.

The record before this court indicates that appellant failed to utilize Civ.R. 56(F) in order to seek a continuance on a ruling on appellees' motion for summary judgment. Moreover, appellant responded fully to appellees' motion. Appellees filed their motion for summary judgment on May 15, 1998. Appellant filed his response on June 17, 1998. In his response brief, appellant fully addressed each of appellees' arguments, citing to eleven depositions and five affidavits. In the conclusion to his brief in response to appellees' motion for

summary judgment, appellant asked the trial court "to deny the Defendants' MSJ and to allow this action to proceed to trial." Nowhere in his response brief does appellant suggest that he needs more discovery to respond to appellees' motion for summary judgment nor does appellant ask the trial court to defer ruling on the motion until more discovery is done.

Moreover, nowhere in his second motion to compel discovery, filed July 15, 1998—one month after appellant filed his brief in response to appellees' motion for summary judgment—does appellant request that the court delay ruling on appellees' motion for summary judgment until after appellees respond to appellant's discovery requests or assert that he needs more discovery to adequately respond to appellees' motion.

In light of this record, we hold that appellant has waived any error by the trial court in entering summary judgment in favor of appellees prior to ruling on appellant's second motion to compel discovery.

Appellant's second assignment of error is overruled.

*Judgment affirmed.*

PATTON and ROCCO, JJ., concur.