[Cite as *Boulder Capital Group, Inc. v. Lawson*, 2014-Ohio-5797.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

| | | |
|---|---|---|
| BOULDER CAPITAL GROUP, INC. | : | |
| | : | Appellate Case No.   2014-CA-58 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No.   09-CV-07 |
| v. | : | |
| | : | |
| PHILLIP W. LAWSON, dba | : | (Civil Appeal from |
| LAWSONS EAST MAIN MARATHON | : |     Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .
**O P I N I O N**
Rendered on the 30th day of December, 2014.
. . . . . . . . . . .

MATTHEW G. BURG, Atty. Reg. #0072556, Weltman, Weinberg & Reis Co., L.P.A., Lakeside Place, Suite 200, 323 West Lakeside Avenue, Cleveland, Ohio 44113
        Attorney for Plaintiff-Appellee

RICHARD J. DONOVAN, Atty. Reg. #0060900, R.J. Donovan Co., L.P.A., 571 High Street, Suite 22, Worthington, Ohio 43085-4132
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}  Phillip W. Lawson appeals from the trial court's entry of final judgment in favor of plaintiff-appellee Boulder Capital Group on its complaint alleging default under a finance lease involving car-wash equipment.

{¶ 2}  Lawson advances seven assignments of error. First, he contends the trial court erred in holding a damages hearing without giving him adequate notice. Second, he claims the trial court erred in prematurely sustaining Boulder Capital's motion to continue the damages hearing. Third, he asserts that the trial court erred in finding Boulder Capital entitled to summary judgment on the issue of liability where the applicable statute of limitation had expired. Fourth, he argues that the trial court erred in finding Boulder Capital entitled to summary judgment on the issue of liability where an accord and satisfaction had occurred. Fifth, he maintains that the trial court erred in finding Boulder Capital entitled to summary judgment on the issue of liability where Boulder Capital failed to mitigate its damages. Sixth, he contends the trial court erred in overruling his own motion for summary judgment. Seventh, he claims the trial court erred in denying his motion to compel responses to discovery requests and for attorney fees in connection with the motion.

{¶ 3}  The record reflects that Boulder Capital entered into a finance lease with Lawson in January 2000. The lease provided for Lawson to rent car-wash equipment from Boulder Capital, which owned the equipment. The lease obligated Lawson to make monthly payments of $3,351.09 for an initial period of sixty months. Absent termination by either party, the lease was subject to an automatic extension thereafter.

{¶ 4}  On January 5, 2009, Boulder Capital filed a complaint alleging that Lawson had breached the lease agreement and that he owed $301,710.68 including interest. Lawson filed an

answer, which he later amended. Among other things, he raised affirmative defenses involving the statute of limitation, accord and satisfaction, and failure to mitigate damages. In December 2011, the trial court overruled a summary judgment motion filed by Boulder Capital. Thereafter, Lawson filed his own summary judgment motion. After the trial court overruled it, he responded by filing a second summary judgment motion. Boulder Capital also filed a second summary judgment motion solely as to liability. The trial court sustained this motion, finding Lawson in default under the lease as a matter of law. (Doc. #37).Thereafter, the trial court sustained Boulder Capital's motion to reset a damages hearing from September 5, 2012 to September 21, 2012. (Doc. #38). Based on evidence presented at the rescheduled hearing (in which Lawson did not participate due to an alleged lack of notice), the trial court filed an entry awarding Boulder Capital $220,136.28 plus costs. (Doc. #43). Lawson appealed, but this court dismissed for lack of a final, appealable order because the summary judgment entry and the entry awarding damages both bore the trial court judge's rubber-stamped name rather than an actual signature. *See Boulder Capital Group v. Lawson*, 2d Dist. Clark No. 2012 CA 88, 2013-Ohio-3270. The trial court subsequently remedied the defect and entered final judgment in Boulder Capital's favor for $220,136.28 plus costs. (Doc. # 57-60). This appeal followed.

{¶ 5} In his first assignment of error, Lawson contends the trial court erred in holding the damages hearing on September 21, 2012 without giving him notice that the hearing had been reset to that date. He claims that this lack of notice deprived him of the opportunity to attend and violated Civ.R. 5(A) as well as due process.

{¶ 6} The record reflects that the damages hearing originally had been set for September 5, 2012. On September 7, 2012, Boulder Capital served Lawson by ordinary mail with

a motion to continue the hearing to September 21, 2012.[1] The trial court then filed a September 17, 2012 entry continuing the damages hearing to September 21, 2012. This entry, which was journalized on September 18, 2012, does not reflect mailing to the parties. Boulder Capital argues, however, that "Lawson's receipt of the motion to continue the hearing containing the proposed date for the new hearing, his opposition to Boulder Capital's motion to continue the damages hearing, and the court's online docket notification, all negate any lack of notice claim." (Appellee's brief at 6).

{¶ 7}    In support of his argument, Lawson cites Civ.R. (5)(A) and due process concerns. Civil Rule 5(A) provides, among other things, that "every order required by its terms to be served" and "every written notice" shall be served on the parties. This court has recognized, however, that a trial court need not serve a party with notice of a hearing date if some form of reasonable notice sufficient to satisfy due process is provided. *Omni Credit Servs. v. Leston*, 2d Dist. Montgomery No. 25287, 2013-Ohio-304,  ¶ 25-29. In the due-process context, reasonable notice means "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *PHH Mtge. Corp. v. Prater,* 133 Ohio St.3d 91,  2012-Ohio-3931, 975 N.E.2d 1008, ¶ 9, quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The entry of a trial or hearing date on a trial court's docket constitutes reasonable constructive notice. *Omni Credit Servs*. at ¶ 26. This is so because parties are expected to keep themselves informed about the progress of their case. *Id.* at ¶ 26-27.

{¶ 8}    Here Lawson knew shortly after September 7, 2012 that Boulder Capital was

---

[1]The record fails to explain the after-the-fact nature of Boulder Capital's September 7, 2012 motion to continue a hearing scheduled for September 5, 2012.

seeking to have the damages hearing rescheduled for September 21, 2012.[2] The trial court did not journalize its entry granting the request and resetting the damages hearing, however, until September 18, 2012. In the proceedings below, Lawson's counsel asserted that he had checked the trial court's on-line docket as late as September 20, 2012 and that it contained no entry resetting the hearing for the following day. (Doc. #41 at 1). Although Lawson's counsel did not support this assertion with an affidavit, counsel for Boulder Capital did not contradict it. Instead, Boulder Capital argued: "[W]hereas Defendant's counsel has demonstrated some effort to ascertain the case status, Defendant's counsel is well aware that [the trial court's] website does not always indicate the current status of the case and Defendant's counsel has demonstrated no additional efforts to ascertain, in particular, the status of the Motion for Continue [sic] such as a call to the Clerk's Office, a call to Plaintiff's counsel or an email to Plaintiff's counsel." (Doc. #42 at 1).

{¶ 9}     While taking the actions suggested by Boulder Capital may have been prudent, we are unpersuaded that Lawson's counsel was obligated to do so. The obligation to provide reasonable notice of the rescheduled damages hearing rested with the trial court. Certainly, failing to give Lawson's counsel either actual notice or constructive notice via its online docket as late as September 20, 2012 would not constitute reasonable notice of the September 21, 2012 hearing. We reach the same conclusion even if we assume, arguendo, that notice of the rescheduled hearing was available online immediately after the trial court's entry was journalized on September 18, 2012. Although parties are expected to keep themselves informed about the progress of their case, we do not believe they should be expected to monitor a trial court's online

___

[2]In the proceedings below, Lawson admitted receiving service of the motion to continue the damages hearing on September 11, 2012. (Doc. #39 at 2).

docket on a near-daily basis. Under the circumstances here, if the trial court wanted to schedule a September 21, 2012 damages hearing as late as September 18, 2012, due process compelled it to do more to give the parties reasonable notice of its intentions. Given the trial court's failure to do so, we conclude that it erred in holding the damages hearing in Lawson's absence. The trial court's judgment entry awarding Boulder Capital damages of $220,136.28 will be vacated and the matter will be remanded for a new damages hearing. The first assignment of error is sustained.

{¶ 10}   Our resolution of Lawson's first assignment of error renders moot his second assignment of error, which asserts that the trial court prematurely sustained Boulder Capital's motion to continue the damages hearing before his time to respond had expired. Accordingly, the second assignment of error is overruled as moot.

{¶ 11}   In his third assignment of error, Lawson claims the trial court erred in finding Boulder Capital entitled to summary judgment on the issue of liability where the applicable statute of limitation had expired. Lawson contends Boulder Capital's cause of action for default under the lease accrued in December 2004 when he missed a required payment. As a result, he argues that Boulder Capital's January 5, 2009 lawsuit was time barred under either Ohio's four-year statute of limitation for an action alleging default under a lease contract or Colorado's three-year statute of limitation for the same type of action. *See* R.C. 1310.52(A); C.R.S. 4-2.5-506 (incorporating C.R.S. 13-80-101).

{¶ 12}   To resolve the statute-of-limitation issue, we must identify the applicable law and determine when the alleged default occurred. Section 5.9 of the parties' lease agreement provides that it shall be governed by Colorado law. Nevertheless, that choice-of-law provision applies to substantive law, not procedural issues such as the statute of limitation. *See*, *e.g.*, *Unifund CCR*

*Partners v. Childs*, 2d Dist. Montgomery No. 23161, 2010-Ohio-746, ¶ 13-16. "'Absent an express statement that the parties intended another state's statute of limitations to apply, the procedural law of the forum governs time restrictions on an action for breach[.]'" *Id.* at ¶ 15, quoting *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.1998). Here the parties' lease agreement does not expressly state that Colorado's statute of limitation applies. Therefore, we look to Ohio law to determine the applicable limitation period. As both parties recognize, the pertinent Ohio statute is R.C. 1310.52(A), which provides that an action for default under a lease contract "shall be commenced within four years after the cause of action accrued." As pertinent here, a cause of action for default accrues when the default occurs. R.C. 1310.52(B).

{¶ 13}   The record reflects that Lawson stopped making his monthly lease payments to Boulder Capital beginning in November 2004. He did not make any payments until August 2005, when he remitted a payment that satisfied the full amount due for November 2004 and part of the amount due for December 2004.[3] Because the August 2005 payment did not satisfy the full amount due for December 2004, Lawson argues that the December 2004 default was never cured. Therefore, he identifies December 2004 as the date of default and maintains that the statute of limitation began running at that time.

{¶ 14}   Lawson's analysis oversimplifies the issue. The record reveals that two types of alleged default exist: (1) default based on Lawson's failure to make his monthly rent payments and (2) default based on Lawson's unauthorized disposition of the car-wash equipment.[4] Lawson's alleged failure to make the rent payments constituted an "event of default" under

---

[3]Lawson claims this payment was part of a broader accord and satisfaction, an issue we will address infra.

[4]The record fails to make clear whether Boulder Capital is alleging one or both types of default. In the interest of completeness, we will address the statute of limitation as it relates to both types.

section 4.1(a) of the lease. Lawson also allegedly disposed of the car-wash equipment in violation of section 3.8 of the lease—an act that constituted a separate "event of default" under section 4.1(c).

{¶ 15} With regard to the first type of default—failure to make the monthly rent payments—a second issue arises, to wit: whether each missed installment payment gave rise to a separate cause of action for default with its own statute of limitation. "'The general rule regarding loans repayable in installments is that each default in payment may give rise to a separate cause of action.'" (Citation omitted) *U.S. Bank Natl. Assn. v. Gullotta*, 120 Ohio St.3d 399, 2008-Ohio-6268, 899 N.E.2d 987, ¶ 30. "Thus, a breach of an installment contract by non-payment does not constitute a breach of the entire contract. The parties to the note may avoid the operation of this rule by including an acceleration clause in the agreement." *Id.* When an acceleration clause is invoked, "a breach constitutes a breach of the entire contract." *Id.* at ¶ 31. Upon acceleration, a contract becomes indivisible and the obligation to pay each installment merges into one obligation to pay the entire balance owed. *Id.*

{¶ 16} Here section 4.2 of the parties' lease gave Boulder Capital numerous optional remedies if an event of default occurred. With regard to non-payment of rent, Boulder Capital could, among other things, (1) seek to recover all *accrued* but unpaid amounts payable under the lease or (2) cancel the lease and seek to recover either all *unaccrued* amounts payable or the fair market value of the equipment. Exercising the latter option effectively would accelerate the debt and obligate Lawson to pay the full lease balance (or the value of the equipment). We note, however, that section 4.2 did not make acceleration automatic or mandatory upon an event of default. Rather, it gave Boulder Capital the *option* to accelerate the debt. *Cf. RCK Inv. Co. v. Centerville Land Investments Ltd*, 2d Dist. Montgomery No. 7804, 1982 WL 3828, at *2 (Oct.

20, 1982) ("We conclude that the provision for acceleration was not automatic or self executing. Acceleration did not and could not take place until the holder exercised the option. At the moment when the check was tendered for the payment due February 1, 1981 the total debt was not due and did not become due unless the subsequent rejection of the check and subsequent announcement of the exercise of the option created a retroactive right to accelerate the entire debt."); *Rueckel v. Lombards, Inc.*, 10th Dist. Franklin No. 79AP-42, 1979 WL 209114, at *3 (June 14, 1979) (distinguishing between an "optional acceleration provision" and an "automatic acceleration clause"). Until Boulder Capital exercised its option to accelerate the debt, each monthly default in Lawson's installment payments gave rise to a separate cause of action with its own statute of limitation.

{¶ 17}  Although the parties have not specifically addressed the foregoing issue, we find nothing in the record indicating that Boulder Capital exercised its right to accelerate the debt before June 12, 2007. On that date, Boulder Capital representative Anna Sheahan sent Lawson a letter declaring the lease in default and demanding full payment of the debt. (Doc. #9 at Exh. 2). Prior to that time, however, we see no evidence that the provision for acceleration had been exercised. In any event, as of June 12, 2007, Lawson's obligation to pay each monthly installment merged into an obligation to pay the entire balance. When Boulder Capital later filed suit on January 5, 2009, at most *one* of those monthly installments fell outside R.C. 1310.52(A)'s four-year statute of limitation—namely the partially-unpaid installment due in December 2004. All installments owed from January 2005 forward were within the four-year period found in R.C. 1310.52(A). Therefore, a cause of action alleging default based on failure to make monthly rent payments was not barred by Ohio's four-year statute of limitation.

{¶ 18}  We reach the same conclusion, albeit with less elaboration, regarding the second

type of default at issue, Lawson's alleged disposition of the car-wash equipment. Lawson's own affidavit below established that he retained possession of the equipment as of July 2005. Specifically, he averred that he had entered into an accord and satisfaction with Boulder Capital in July 2005. According to Lawson, part of the agreement obligated him to return the equipment to Boulder Capital upon receiving instructions for surrender and delivery, including an address where the equipment should be sent. (See Doc. #9, Lawson affidavit). Although Lawson averred that Boulder Capital never told him where to send the equipment, his affidavit supports a reasonable inference that any improper disposition of the car-wash equipment in violation of the lease occurred after July 2005. Because Boulder Capital filed suit on January 5, 2009, a cause of action alleging default due to disposition of the equipment was not barred by Ohio's four-year statute of limitation.

{¶ 19}   Finally, we must consider the applicability and impact, if any, of R.C. 2305.03, Ohio's "borrowing" statute. It provides: "No civil action that is based upon a cause of action that accrued in any other state * * * may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state * * * has expired or the period of limitation that applies to that action under the laws of this state has expired." In essence, R.C. 2305.03 adopts another state's statute of limitation if the cause of action accrued there and if the other state's statute of limitation is shorter than Ohio's.[5]   Whether Boulder Capital's cause of action for default accrued in Ohio or Colorado is not a simple question, and

---

[5]Contrary to Boulder Capital's argument on appeal, we believe Lawson sufficiently raised the borrowing statute below. (*See* Doc. #20 at 25-27).We note too that R.C. 2305.03 took effect on April 7, 2005, which was after Lawson allegedly started missing his payments under the finance lease but before Boulder Capital filed its lawsuit. Because we conclude that no statute-of-limitation bar exists even if R.C. 2305.03 applies, we need not consider or address any potential retroactivity problems with regard to application of the borrowing statute. For present purposes, we simply will assume, arguendo, that the borrowing statute applies.

does not have a simple answer. But even if we assume, arguendo, that the cause of action accrued in Colorado, Boulder Capital's complaint is not time barred by that state's statute of limitation either.

{¶ 20}   A Colorado statute, C.R.S. 4-2.5-506, provides that an action for default under a lease contract must be brought within the time prescribed in C.R.S. 13-80-101. In turn, C.R.S. 13-80-101 establishes a three-year statute of limitation for contract actions except as provided in C.R.S. 13-80-103.5. One exception in C.R.S. 13-80-103.5 provides a six-year limitation period for "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action[.]" A second exception provides a six-year limitation period for "all actions for the enforcement of rights set forth in any instrument * * * evidencing any debt[.]" C.R.S. 13-80-103.5(1)(a).

{¶ 21}   In the present case, we conclude that Boulder Capital's action against Lawson fits within the scope of C.R.S. 13-80-103.5(1)(a). The first exception covers debts that may be ascertained by reference to an agreement or by simple computation using extrinsic evidence if necessary. *Portercare Adventist Health Sys. v. Lego*, 286 P.3d 525, 528 (Colo. 2012) ("Therefore, a 'liquidated debt' exists if a consumer is obligated to pay either an amount stated in the agreement, or an amount capable of ascertainment by simple computation that arises out of the subject transaction."). Here the parties' lease agreement set forth what Lawson owed Boulder Capital each month. Section 4.2 also provided detailed terms for computing the damages to which Boulder Capital would be entitled upon default. Although the amount of money Boulder Capital might recover would require computation and, potentially, extrinsic evidence, these facts do not preclude the applicability of C.R.S. 13-80-103.5(1)(a). We also see no reason why the second exception would not apply. As explained above, it covers actions for the enforcement of

rights set forth in an instrument evidencing any debt. In the present case, Boulder Capital sought to enforce its rights (i.e., contractual remedies) set forth in the finance lease, which evidenced Lawson's debt. *Cf. BP Am. Prod. Co. v. Patterson*, 185 P.3d 811, 812 (Colo. 2008) (noting the parties' agreement that C.R.S. 13-80-103.5(1)(a)'s six-year statute of limitation applied to a claim for unpaid royalties due under a natural-gas lease). For the foregoing reasons, we conclude that Boulder Capital's January 5, 2009 lawsuit was timely even if we apply Ohio's borrowing statute and look to Colorado law when resolving the statute-of-limitation issue. Accordingly, Lawson's third assignment of error is overruled.

{¶ 22} In his fourth assignment of error, Lawson argues that the trial court erred in finding Boulder Capital entitled to summary judgment on the issue of liability where an accord and satisfaction had occurred.

{¶ 23} "An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *Allen v. R.G. Indus. Supply*, 66 Ohio St.3d 229, 231, 611 N.E.2d 794 (1993). Accord and satisfaction is available as a defense only when a genuine dispute exists as to the amount of a debt. *Id.* Here Lawson claims he and his son provided affidavits establishing the existence of an oral accord entered into with Lance Munson, an agent of Boulder Capital. Lawson asserts that the agreement obligated him to make a final payment of $6,106.54 and to return the car-wash equipment to Boulder Capital upon being provided with return instructions. In exchange, Boulder Capital would accept the payment and the equipment in full satisfaction of Lawson's obligation under the finance lease. Lawson claims he satisfied his part of the agreement by making the payment and standing ready to return the equipment. According to Lawson's affidavits, Boulder Capital never provided him with

instructions or an address to return the equipment. He also asserts that Boulder Capital failed to controvert his averments about the existence of an oral accord because Munson, the person with whom he purportedly reached the agreement, no longer works for Boulder Capital and did not provide a competing affidavit. Therefore, he claims the trial court erred in entering summary judgment for Boulder Capital on the issue of liability under the finance lease.

{¶ 24} In the proceedings below, Lawson briefed the accord-and-satisfaction issue under both Ohio and Colorado law. (*See* Doc. #20 at 38-43). Although the parties' lease agreement makes Colorado substantive law applicable, we agree with Lawson that the result is the same under the law of either state. We disagree with him, however, insofar as he contends a genuine issue of material fact exists on his accord-and-satisfaction affirmative defense.

{¶ 25} Colorado and Ohio have adopted their own versions of a 1990 revision to Article 3 of the Uniform Commercial Code that specifically addresses the creation of an accord and satisfaction by use of a negotiable instrument such as a check. In particular, both states "have statutes modeled after Uniform Commercial Code Section 3-311 ('U.C.C.'); both generally permit a debtor who complies with certain requirements to tender a check to a creditor for less than the amount claimed in full satisfaction of a disputed [or] unliquidated claim." *Nexus Communications, Inc. v. Qwest Communications Corp*., 193 Ohio App.3d 599, 2011-Ohio-1759, 953 N.E.2d 340, ¶ 49 (10th Dist.), citing  U.C.C. Section 3-311(a); C.R.S. 4-3-311(a); R.C. 1303.40. Under the U.C.C. as well as the Colorado and Ohio statutes, "the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." *Id.* citing U.C.C. Section 3-311(b); C.R.S. 4-3-311(b); R.C. 1303.40(A).

{¶ 26}   Here the $6,106.54 check Lawson tendered to Boulder Capital is devoid of any statement that it was tendered in full satisfaction of Boulder Capital's claim. (See Doc. #9 at Def. Exh. 1). Nor does Lawson even argue that any accompanying written communication included such a statement. Absent the required statement, either on the check or accompanying it, Lawson's defense necessarily fails under C.R.S. 4-3-311 and R.C. 1303.40. Because both statutes require a conspicuous written statement that a check is being tendered in full satisfaction of a debt, Lawson's evidence regarding a purely oral agreement without the written statement fails to create a genuine issue of material fact.[6] Accordingly, the fourth assignment of error is overruled.

{¶ 27}   In his fifth assignment of error, Lawson maintains that the trial court erred in finding Boulder Capital entitled to summary judgment on the issue of liability where it failed to mitigate its damages.

{¶ 28}   Lawson asserts that, even without regard to any alleged accord and satisfaction, "Boulder Capital foreclosed itself from recovering the balance of payments under the lease" by failing to provide him with an address where the car-wash equipment could be returned. (Appellant's brief at 24). If we assume for present purposes that Lawson is correct, his assignment of error lacks merit. It does not follow that the trial court erred in granting Boulder Capital summary judgment on the issue of *liability* due to an alleged failure to mitigate *damages*. By definition, a failure by Boulder Capital to mitigate damages might impact the damages

---

[6]In the proceedings below, Lawson cited *Allen v. R.G. Indus. Supply*, 66 Ohio St.3d 229, 233, 611 N.E.2d 794, 798 (1993), for the proposition that an accord "can be proved either by extrinsic evidence of agreement or by sufficient notation on the check." We note, however, that the Ohio Supreme Court's 1993 decision in *Allen* pre-dated the August 1994 effective date of R.C. 1303.40, which explicitly requires that the check or an accompanying written communication contain "a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." Under the statute, then, any extrinsic evidence provided to prove an accord also must include a written statement accompanying a check.

ultimately awarded, but it would not negate a finding of *liability* based on Lawson's default under the lease. *Cf. Abroms v. Synergy Bldg. Sys.*, 2d Dist. Montgomery No. 23944, 2011-Ohio-2180, ¶ 60 (recognizing that a failure to mitigate damages does not necessarily bar recovery and simply means a plaintiff cannot recover those damages it reasonably could have avoided); *see also Deible v. Poole*, 691 N.E.2d 1313, 1316 (Ind.App.1998) (holding that mitigation of damages is a defense to the damages awarded but "not a defense to the ultimate issue of liability").[7] Indeed, the damages issue does not arise unless and until there has been a finding of liability. To the extent that Lawson believes Boulder Capital failed to mitigate its damages, he may raise the issue on remand at the new damages hearing required by our disposition of the first assignment of error. The fifth assignment of error is overruled.

{¶ 29} In his sixth assignment of error, Lawson contends the trial court erred in overruling his own motion for summary judgment. Specifically, he claims the trial court should have entered summary judgment for him based on the statute of limitation expiring, an accord and satisfaction existing, and mitigation of damages not occurring.

{¶ 30} We find Lawson's argument unpersuasive. In our analysis above, we concluded that the statute of limitation had not expired, that Lawson's accord-and-satisfaction defense failed as a matter of law, and that Boulder Capital's alleged failure to mitigate damages did not preclude a finding of liability for default under the finance lease. In light of these determinations,

---

[7]It remains possible, of course, that under the right circumstances a hypothetical plaintiff might be able to mitigate all damages. That does not appear to be the case here. In the proceedings below, Lawson averred that Boulder Capital agreed in July 2005 to provide him with an address to return the car-wash equipment but failed to do so. (Doc. #9, Lawson affidavit). By that time, however, Lawson already had missed more than six months' worth of monthly lease payments of $3,351.09. Even if we assume that Boulder Capital failed to mitigate its damages from July 2005 forward, we see no reason why that would preclude all recovery. In any event, as set forth above, a failure to mitigate *damages* would not demonstrate error in the trial court's finding of *liability* based on a default under the lease agreement.

the trial court properly declined to enter summary judgment for Lawson on Boulder Capital's complaint. The sixth assignment of error is overruled.

{¶ 31}   In his seventh assignment of error, Lawson claims the trial court erred in denying his motion to compel responses to discovery requests and for attorney fees in connection with the motion

{¶ 32}   The record reflects that Lawson filed his motion on June 18, 2012, seeking to compel responses to interrogatories and document-production requests. (Doc. #21). Although Boulder Capital already had responded to the discovery requests, Lawson asserted its responses were inadequate. Boulder Capital opposed the motion and also supplemented its responses. (Doc. #27). In a July 12, 2012 reply memorandum, Lawson argued that the responses remained inadequate. (Doc. #28). Thereafter, on July 26, 2012, both parties moved for summary judgment. (Doc. #31, 32). As set forth above, the trial court ultimately sustained Boulder Capital's motion. The trial court never expressly ruled on Lawson's motion to compel.

{¶ 33}   On appeal, Lawson claims the trial court's implicit denial of the motion to compel when entering summary judgment against him constituted an abuse of discretion. We disagree. Notably, Lawson did not file a Civ.R. 56(F) motion and affidavit below seeking to delay the trial court's summary judgment ruling pending resolution of the discovery dispute. Because he never invoked Civ.R. 56(F), the trial court was permitted to resolve the competing summary judgment motions without explicitly ruling on the motion to compel. *Johnson v. Burt*, 2d Dist. Montgomery No. 13095, 1994 WL 567426, *4 (Sept. 9, 1994) ("Plaintiffs did not request that the court continue its determination of the motion due to Dr. Blue's failure to comply with discovery requests nor did Plaintiffs submit affidavits stating that they could not present by affidavit facts essential to justify their opposition to the motion for summary judgment. Both of

these responses are contemplated by Civ.R. 56(F). Therefore Plaintiffs cannot demonstrate that the trial court erred in granting summary judgment while Plaintiffs' motion to compel discovery was pending."); *Warwick v. DeWitt*, 4th Dist. Ross No. 01CA2613, 2002 WL 59667, *3 (Jan. 15, 2002) ("A party who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve its rights thereto for purposes of appeal. * * * Appellants did file a motion to compel discovery with the court. However, absent a motion requesting a continuance of the summary judgment proceeding pending discovery, the trial court had discretion to proceed."); *Moore v. Kroger Co.*, 10th Dist. Franklin No. 10AP-431, 2010-Ohio-5721, ¶ 23 ("Even if a party files a motion to compel discovery, a trial court does not err when it rules on the motion for summary judgment without ruling on the motion to compel when the party has failed to file a Civ.R. 56(F) motion.").

{¶ 34}  Nor can Lawson show that he was prejudiced by the trial court's implicit denial of his motion to compel. His failure to invoke Civ.R. 56(F) below precludes a finding of prejudice and results in waiver of the issue. If further responses to his discovery requests were necessary for him to oppose Boulder Capital's summary judgment motion, Lawson was obligated to seek relief under Civ.R. 56(F). Because he did not do so, he cannot show (and does not even attempt to show) that the disputed discovery would have impacted the trial court's summary judgment ruling. On the other hand, if further responses were unnecessary for Lawson to oppose summary judgment, then the trial court's implicit denial of the motion to compel plainly was not prejudicial to him. *Cf. Tripp v. Beverly Enterprises-Ohio, Inc.*, 9th Dist. Summit No. 21506, 2003-Ohio-6821, ¶ 68-69; *see also Miller v. Premier Indus. Corp.*, 136 Ohio App.3d 662, 676, 737 N.E.2d 594 (8th Dist.2000) ("A party who fails to comply with the provisions of Civ.R. 56(F) waives any error in a trial court's premature ruling on a motion for summary judgment."); *Bank of New York Mellon v. Matthews*, 6th Dist. Fulton No. F-12-008, 2013-Ohio-1707, ¶ 23

("Here, because appellants failed to avail themselves of the remedy contained in Civ.R. 56(F), they are precluded from challenging the discovery orders on appeal or from asserting that the trial court prematurely granted summary judgment prior to the completion of full discovery. Accordingly, we find that this issue has not been preserved for review.").

{¶ 35} In opposition to the foregoing analysis, Lawson cites this court's opinion in *Maguire v. National City Bank*, 2d Dist. Montgomery No. 23140, 2009-Ohio-4405, for the proposition that he was not required to seek relief under Civ.R. 56(F) and that his motion to compel, alone, was enough to establish prejudice and to preserve the discovery issue for appeal. *Maguire* does not support this proposition. The appellant in *Maguire* argued that the trial court had erred in entering summary judgment against him while he had a motion to compel discovery pending. In rejecting his argument, this court noted (1) that the motion to compel did not comply with Civ.R. 37 because it lacked a statement regarding efforts made to resolve the dispute and (2) that "[n]either in his motion to compel, nor otherwise, did Maguire seek an extension of time to respond to the motion for summary judgment, as permitted by Civ.R. 56(F), nor does he make any allegation that he was unable to respond adequately to the motion for summary judgment without the requested discovery." *Id.* at ¶ 18-19. Nowhere in *Maguire* did this court say resort to Civ.R. 56(F) is unnecessary when a proper motion to compel is filed. As explained above, a Civ.R. 56(F) affidavit is necessary to preserve the discovery issue and to enable us to determine on appeal whether any prejudice resulted from the trial court's entry of summary judgment while a motion to compel was pending. Here Lawson did not seek relief under Civ.R. 56(F) or otherwise argue that he could not properly oppose Boulder Capital's summary judgment motion due to the outstanding discovery dispute. Therefore, the trial court did not err in implicitly denying the motion to compel by entering summary judgment against Lawson. The seventh

assignment of error is overruled.

{¶ 36}   Based on the analysis set forth above, the judgment of the Clark County Common Pleas Court is affirmed in part and reversed in part. Specifically, the judgment is affirmed on the issue of Lawson's liability to Boulder Capital for default under the parties' finance lease. The judgment is reversed, however, on the issue of damages. The trial court's damages award is vacated, and the cause is remanded for the limited purpose of a new damages hearing with adequate prior notice to both parties.

. . . . . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Matthew G. Burg
Richard J. Donovan
Hon. Richard J. O'Neill